Case number 11-3340, Gene Ware, NO, versus First Specialty Insurance Corp. Would the attorneys who are making a presentation please step forward and identify yourselves and the party you represent. Good morning, Your Honors. I'm Leslie Rosen. I represent the 42 plaintiffs in this case. Good morning. Robert Conlon on behalf of the Appellee for Specialty Insurance Corp. I'll give you about 30 minutes to be divided equally, and you may reserve your time. Ms. Rosen. Okay. Please report, Your Honor. You all know there's just one issue before the court today. And that issue is did the defendant insurance company meet its burden of proof? And it was their burden of proof to show that there was only one occurrence in this porch collapse. And I insist that the answer in this case is no. I understand I might be having a very tough argument here today because at first blush you look at it and you say, oh, come on, one porch collapse, one occurrence. It's a simple way to look at it. And as a young lawyer, I was taught simple is good, simple is great. Keep it simple, stupid, or kiss was the adage that we were taught as young lawyers. But in this case, that would be a very wrong way to look at it. Very wrong. We agree on a couple things here. We all agree that the Illinois Supreme Court adopted the cause test. We don't have to talk about the effect test. It's the cause test. And that was established in NICOR in 2006. NICOR, of course, was a property damage case. And in that case, there were 17 years of spilled mercury and the insurance company wanted it to be one occurrence, as they always do, to minimize, you know, payments. And they said, one occurrence. And the court said, no, not so. And they say, well, here, there's one occurrence, one porch collapse, one occurrence. And the answer should likewise be no. The cause test is just the beginning of the analysis. It is not the whole, you know, the whole ball of wax. In this case, the court should apply the time and space test that was established by the Illinois Supreme Court in 2009 in Edison Insurance Company versus Fay. That is the newest case. Of course, you're bound to follow Illinois Supreme Court. And I think this case is pretty much the same as Edison. I presume you're familiar with the facts. Edison can be distinguished, can it? No. Because undoubtedly we have two young kids who were tragically killed. Their bodies were found a couple of days after they disappeared. Yes. And there, there's no witnesses as to how both kids happened to die. I mean, no one can really tell. Here we have a crash, boom, and we have these people dead in one swell swoop. Well, no, first of all, it wasn't one fell swoop where they were all dead because you don't know when they died. And one died, we know, 43 hours later. But I don't think that's the important aspect of Edison versus Fay where they didn't know why they died. We know they died because they both went into the water. We know that one died principally, the autopsy report said, of drowning. The second one said hypothermia secondary to drowning or the other way around. But in that case, the cause, there was one cause in Edison versus Fay of the deaths. And that cause was the landowner's negligent fencing of his property. That was it. One cause, two people dead, one occurrence or two occurrences. My case is analogous to that. We have a porch collapse, no question. It was one porch collapse in a way, but it was the third floor that then collapsed down to the second floor, that then went down. And if you look at the original opinion in this case by, I think Justice Greiman wrote it about when we tried to keep the city of Chicago with the case, the facts there are in addition, you can take judicial notice of them, there was no lookout built. This porch was basically just standing next to the building. It was gross. It wasn't affixed. It was affixed to the building. They go in about two feet. Mr. Pappas didn't have any lookout beams. He just had, it was like bigger than molly bolts like you put in if you're hanging a picture or a bookshelf in your house, just in there. So the third floor, which was built of inferior wood and inadequate, went down. And then the second floor could have stayed, but it didn't. It collapsed also into the first floor. So there's one, in Edison versus Fay, they say there was one ongoing negligent omission. The landowner's continuous failure to fence his property properly. He fenced it. He didn't look back, and it went. In this case, Mr. Pappas built this porch, built it very shabbily, no permits, no nothing, and it lasted for a few years. I don't know why, but it did. And then it fell. So it is analogous on a legal basis. I see the factual differences, of course, that this is a porch collapse. But in this case, it's still one long negligent omission, and in that instance, you use the time and space test. And in this case, that means that the defendant's insurance company, which had the burden of proof, had to show that everybody died at the same time for the same reason. They didn't even try. They didn't even try. They say they just want to keep it real simple and stupid. One porch collapse, one occurrence. That is not the way Illinois courts have looked at occurrences. And I'm sorry to say, actually, I know recently Justice Palmer was affirmed by Judge Ratchford in a case that involved an insurance case where an employee of a law firm was muzzling money, and it wasn't an occurrence question. It was a question of whether it was related to. And it's similar. It's similar. You know, even a broken clock is right twice a day. I understand that case. I can tell you that case is, it says in it explicitly that we're not talking about an occurrence policy and we're not talking about Edison versus Fate. But I have to say, you know, that opinion gives me some pause because they're similar. But here, I'm sorry, I just lost my train of thought. That's my fault. Go ahead. Take your time. That's my fault. But here, you don't know, everybody didn't die at the same time and everybody wasn't injured at the same time. And everybody wasn't injured or dead for the same reason. The people standing on the third floor died when they went down, or were injured when they went down, and some people died of asphyxiation, most of them. Some people died when their necks were snapped in half. One woman died 43 hours later. And some people had different injuries. Post-traumatic stress did not occur then. It occurred later. Don't they have to even try to prove that everything's the same time and space? They say no. Oh, we're just going with the cause test. And I say no. This case, I mean, the continuing negligent omission is the same here as it was in Edison. Failure to fence, failure to build the proper porch, and keep looking at it to make sure that it was built right. And if you look at the history of Illinois Appellate Courts and Supreme Court cases on occurrences, you see, of course, first of all, it's de novo review and liberally construed in favor of the insured. But almost all the big cases, almost all the cases involve multiple occurrences. And even you go back to Mason, which is an old case. I love that case. Mason is the case where a restaurant fries up some onions and they're tainted with botulism. It's one cause, one batch of bad onions. Each time they serve them, different occurrence. Diocese of Joliet versus Lee. One priest molesting one girl for two years. How many occurrences? Two. Why? Well, they say, well, because the diocese did not revisit its negligent. It's only one cause. It was negligent supervision. They didn't go back and revisit their negligent supervision in the second policy year, so we're going to give it two occurrences. That is the way you should look at it. So that ruling would be consistent with Illinois. A ruling in my favor would be consistent with Illinois policy and precedent. And that's it. All right. You have some time to come back. Thank you very much. All right. Thank you. May it please the Court, on behalf of the Applee First Specialty Insurance Corporation, I want to start out with pointing out to the panel two major concessions that the plaintiffs made in their appellate briefs. Number one, they conceded at page 22 of their opening appellate brief that the porch collapse was, in quotes, the cause of all their injuries and deaths. And, importantly, that there was no intervening or subsequent cause. And number two, they conceded at page six of their appellate reply brief that the porch collapse was the only  As Ms. Rosen just announced, the parties are in agreement that we are in a cause theory state. We're not an effect theory state. And the Supreme Court in NICOR, which is still the law of this great state, along with a vast majority of jurisdictions, by the way, we checked, I think there's one that does it the other way, the effect state, and that's Louisiana. And there's even a split of authority there. So it is overwhelming. And it is simple. It's not stupid, with all due respect. It is simple. The NICOR and all the jurisdictions that follow that say to determine the number of occurrences under an insurance policy, you look at the cause of the injuries. Now, we have, the parties have 79 stipulated facts. And there are five of them that are absolutely critical to the analysis here that I think make the finding inescapable that we have one cause, all injuries and deaths, and therefore one occurrence. Stipulated facts seven and eight, all 42 plaintiffs were on the porch system when it suddenly and immediately collapsed, causing all their injuries and deaths. Stipulated fact nine, the porch collapse was not interrupted by any human act or other preceding or subsequent events. Stipulated facts 54 and 55, all the deaths, injuries, and mental conditions resulted directly and solely from the porch collapse, and there were no intervening acts or circumstances which could have or did contribute to the cause of the deaths, injuries, or mental conditions. As Judge Valderrama found in his well-reasoned opinion below, there was only one cause of the plaintiff's injuries and deaths, the porch collapse, and therefore one occurrence under the First Specialty Insurance Corporation policy. Now, the language of our policy is very instructive as well. And NICOR teaches us that the first step is look at the policy and to determine the number of occurrences. NICOR said the primary objective, in quotes, is to ascertain and give effect to the intentions of the parties as expressed in the contract, end quotes. And the unambiguous terms are given their plain and ordinary meaning. Illinois courts have found the exact language that we have in our policy, the definition of occurrence, to be clear and unambiguous. The plaintiffs agreed to the wording of there's no issue on the policy wording. It was attached to their complaint. It was a certified copy of the policy that we produced. We agreed to their allegation and complaint that it is a true and correct copy. So there's no dispute there. They have not argued ambiguity. And to summarize what our policy says, and there's various stipulations, 60 and 61, on the policy language. It says FSIC will pay those sums the insured is legally obligated to pay as damages because of bodily injury caused by an occurrence. An occurrence is defined as an accident during the policy arising out of the ownership, maintenance, or use of the premises. And that the limits of the declarations fix the most that FSIC will pay, regardless of the number of insureds, claims made, or suits brought, or persons or organizations making claims or bringing suits. And each occurrence limit is the most we'll pay for the sum of damages, and that's $1 million. There's a general aggregate of $2 million. And bodily injury, which the language in our policy, which is different than NICOR and FAME, is they define bodily injury to include death resulting from any bodily injury, regardless of what time the death happened. Now, the cause theory, it's important to understand the difference between the cause and effect theory to understand how clear the conclusion must be reached here. They provided a hypothetical at the Supreme Court. They said there's a situation, a guy's driving a car. He leans down to turn the radio, and he hits three cars in succession. Bang, bang, bang. Under a cause theory, that's one occurrence. Under an effect theory, that's three occurrences, because there's three damaged cars. And under the cause theory, they said the fact that the damage to all three cars resulted from the same conditions and was inflicted as part of an unbroken and uninterrupted continuum would yield the conclusion that there was only one occurrence. Now, the time and space test that Ms. Rosen has asked this Court to apply, the analysis has to start with, first of all, Addison did not overturn NICOR. What it did was extend the cause theory. In fact, it reaffirmed that we are in a cause theory state and the time and space test is an extension of the cause theory. They didn't change it to an effect theory state. And it applies under very specific situations. And to understand why they did that, what is the purpose of the time and space is very telling here. How do the post-traumatic stress syndrome injuries apply in this case? Counsel contends that that developed later. It actually was not directly resulted from the porch collapse, but as a result of observing all this mayhem. Great question. And they stipulated that it was directly caused by all their injuries and mental conditions. And it stipulated the fact 54 and 55 resulted from the injuries that were sustained when the porch collapsed. And post-traumatic stress disorder, as the Court I'm sure knows, is an extension and manifests itself from injuries or a traumatic event like a porch collapse. So it's all one injury-causing event, and that's the porch collapse. Now, the time and space test, Your Honor, only applies when there's two things going on. Number one, there's ongoing continuous negligence. And number two, there's separate, independent, and later in time injury-causing events. And we have neither of the above. There's nothing ongoing. Yes, the porch was built in one year, and several years later the porch system collapsed. But once it collapsed, there was nothing ongoing about the negligence. It ceased with that event that caused injury and death to all 42 people. So the second part was whether there's separate, later in time injury-causing events. And nobody could have gotten hurt or injured or died after the porch collapsed. It was done. And the situation in Fay, for example, the reason why they applied this extension was you could have somebody jump a fence, get stuck in the quicksand pit or the quick condition pit on day one, and then six months later somebody unrelated to that person jumps the fence and the same thing happens. They get hurt. And what the court said is it's not right to be able to bundle those two things unless the cause and result, these two injury-causing events, the two different people that died at separate times are simultaneous, like what we have here with the porch collapse, or they're linked in time and space so that an average person would consider it one event. And so our position is, and Judge Valdebar-Amra agreed, that the time and space test doesn't apply here. There's no ongoing negligence, and there's not another injury-causing event. But Judge Valdebar-Amra said in the interest of completeness, he applied it here and he said, well, even if you do apply it, the record is very clear that all 42 people were on the porch system, that's the space element, and it all happened in a moment. You know, it's different than a situation if we had a railing where it could give way, and on day one, one person went up to the third floor and fell over, and the property owner didn't know about it, and then three months later somebody fell off the railing. The court would then apply a time and space test and say, you know,  and with that scenario I would suggest that it's not. But here everything happened at once. Anything else? Any further questions? Thank you. Thank you very much. Ms. Rosen? I have a few minutes. A few points. Counsel just said here that the time and space test doesn't apply because the deaths here were all simultaneous and the porch collapse happened in a moment. There's no stipulated fact on that point. There's no evidence on that point whatsoever, none. Nothing in the record suggests that to be true. That's my most important fact here. He also said that nothing in Edison, you apply this time and space test when there's an ongoing negligence and continuing negligence and a later injury event. But in Edison, there was nothing ongoing, nothing that continued after the guy, the owner, didn't check his fence and didn't build it properly. The boys fell in. They say you couldn't bundle. They didn't bundle those two boys' deaths. There's no showing those boys died months apart, days apart, weeks apart, maybe minutes apart. You couldn't tell at all. There was no evidence. No, there was no evidence except that common sense tells you if you're with a friend and a friend falls in the pond, you might go to try to save him. But if you're off somewhere else and you come by 15 minutes later and you see your friend dead in the pond, you might not try the same thing or you might not try it a half hour later. It's more likely than not that they were close together. It was very close in time. It doesn't make any sense to me. There's no evidence whatsoever of what happened to those two kids. You're assuming, but there's nothing, nothing in the record. That's why the Supreme Court went that way. Pardon me? That's why the court went the way they did because they had absolutely no evidence. You have evidence here. No, we don't. We have evidence that the porch collapsed. We don't have any evidence of how long somebody was under the rubble suffocating. We do have evidence. The only evidence we have is that somebody died 43 hours later. You can assume that when there's one person who died, a secondary cause was snapping of the neck, that that was pretty fast. But you can't assume that for suffocating. So what's the time and space? What's your time? Anything past 10 seconds counts? How about 43 hours? I'm not saying. Is your line 43? No, it's not my line, but certainly 43 counts. In one of the cases that was cited, it was five minutes. I can't pronounce it. The car accident case where there were two occurrences, one occurred five minutes later, that was a separate occurrence. So five minutes would count. I'd say five minutes. I'll go with that. Maybe less, but maybe not. But here there is no evidence. They didn't even put the death certificates in the record here. My important point is that it's their burden of proof, and they didn't even try to make it. They did not try. I did stipulate that all the injuries were sustained because of the porch collapse, Justice House, but that is not the same as saying that they all happened at the same time. And for the same reason, in the past Justice House asked about post-traumatic stress disorder. There's no evidence as to when that happened. It does arise because of the porch collapse, obviously. Had there not been a porch collapse, Lindsay Jackson wouldn't be developing post-traumatic stress disorder because she brought her brother and her best friend and they both died. She wouldn't have been suffering but for the porch collapse. No question about it. But it did not happen then and there. Not at all. Finally, my last point is that to compare this case in any way to a car accident case, which is what my opponent did as the example of one case, is wrong. Because this is not comparable to a car insurance case. When you have car insurance, you're insuring yourself. If you hit somebody, that person doesn't have enough insurance. You have UIM. You can take care of yourself. In this case, my people are just, you know, they were assigned Mr. Pappas's claim against his insurance company and that's why we're going forward. But they didn't have any option to get their own insurance. And so I don't think that this case is anything like a car insurance case. With that, thank you very much. This matter will be taken under advisement and very vigorously argued. I enjoyed the briefs. Thank you.